UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SHONDELL PITTS,<br><br>         Plaintiff(s),<br><br>  v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>         Defendant(s). | Case No. 2:19-CV-1974 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant FuelZone Mart 2, LLC's ("FuelZone") motion to dismiss. (ECF No. 16). Plaintiff Shondell Pitts ("Shondell"), individually and as legal guardian of P.P., a minor, (collectively, "plaintiffs") filed a response (ECF No. 20), to which FuelZone replied (ECF No. 24).

Also before the court is FuelZone's motion to stay discovery (ECF No. 27) to which plaintiffs replied. (ECF No. 29).

Also before the court is defendants' Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Joseph Lombardo and officer David Nesheiwat (collectively, "the LVMPD defendants") motion for partial dismissal of plaintiffs' complaint (ECF No. 7). Plaintiffs filed a response (ECF No. 13), to which the LVMPD defendants replied (ECF No. 14).

**I. Background**

The present case stems from a shooting incident on November 11, 2017. (ECF No. 16 at 2). Plaintiffs claim that Phillip Pitts ("Phillip"), Shondell's late husband, assaulted and brandished a firearm at Shondell while she was driving. (ECF No. 1 at 4). Plaintiffs claim that Shondell stopped at the FuelZone Mart property and entered the building, after which an unidentified "doe clerk" locked the door to prevent Phillip from entering. *Id.* at 5. They allege

**James C. Mahan**
**U.S. District Judge**

1  that the doe clerk ultimately unlocked the door, whereupon Phillip entered the FuelZone Mart
2  and forced the plaintiffs outside. *Id.*

3  Once outside, Phillip, who was visibly drunk and stumbling, continued to assault
4  Shondell while she began wrestling control of the handgun away from him. (ECF No. 13 at 2).
5  During the struggle, Officer Manuel Diuguid arrived on the scene and began shouting verbal
6  commands at Phillip in an attempt to de-escalate the situation. *Id.* at 3.  Officer Diuguid
7  allegedly did not have a proper backdrop to use his firearm during this incident, partly because
8  there were two racks of propane tanks immediately behind Phillip and Shondell. *Id.* at 3.
9  Minutes later, defendant Officer David Nesheiwat arrived on the scene, jumped out of his patrol
10 vehicle, walked toward Phillip and Shondell, and fired four shots in their direction. *Id.* Three of
11 Officer Nesheiwat's bullets struck Phillip, killing him, and one hit Shondell. *Id.* The Pitts' ten-
12 year-old daughter witnessed the incident from 15 feet away. (ECF No. 1 at 32).

13 Plaintiffs claim that FuelZone and its "doe clerk" owed the plaintiffs a duty of care to
14 avoid unnecessary physical harm and to avoid putting the plaintiffs in harm's way. (ECF No. 16
15 at page 3).  They further claim that FuelZone and its "doe clerk" owed the plaintiffs a heightened
16 duty of care to protect the plaintiffs by locking Phillip out of the building.  *Id.*  The plaintiffs
17 claim that FuelZone breached these duties by unlocking the door and allowing Phillip to force
18 the plaintiffs out of the building. (ECF No. 1 at 11).

19 Plaintiffs bring a Fourth Amendment excessive force claim against Officer Nesheiwat.
20 (ECF No. 1 at 7).   Plaintiffs also allege that LVMPD is responsible for the alleged
21 unconstitutional actions of Officer Nesheiwat because "it has unconstitutional policies, practices,
22 and customs." *Id.* at 9.  The complaint also alleges state law claims for battery, negligence,
23 negligent supervision and training, and negligent infliction of emotional distress ("NIED"). *Id.*
24 at 10–14.

25  . . .
26  . . .
27  . . .
28  . . .

**James C. Mahan**
**U.S. District Judge**

- 2 -

**II.     Legal Standard**

*A. Motion to dismiss under 12(b)(5)*

Pursuant to Federal Rule of Civil Procedure 12(b)(5), a defendant may move to dismiss for insufficient service of process under Federal Rule of Civil Procedure 4(m) ("Rule 4(m)").  *See* Fed. R. Civ. P. 12(b)(5); Fed. R. Civ. P. 4(m).

Rule 4(m) requires that if a defendant is not served within 90 days after a complaint is filed, the court must dismiss the action without prejudice against the defendant.  *See* Fed. R. Civ. P. 4(m).

However, Rule 4(m) also allows the court to extend the time that the plaintiff effectuate service, even if the 90-day time period has lapsed.  *Id.*  Rule 4(m) provides as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

*Id.*

Rule 4(m) requires a two-step analysis in determining whether to extend the prescribed time period for the service of a complaint.  *See* Fed. R. Civ. P. 4(m); *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).  "First, upon a showing of good cause for the defective service, the court must extend the time period.  Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period."  *In re Sheehan*, 253 F.3d at 512.

Courts must determine whether good cause for the delay has been shown on a case-by-case basis.  *Id.*  "At a minimum, 'good cause' means excusable neglect."  *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991).  The Supreme Court has established a four-factor balancing test to determine excusable neglect, including (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.  *See Pioneer Inv. Servs. Co. v. Brunswick*

**James C. Mahan**
**U.S. District Judge**

*Assocs. Ltd. P'ship*, 507 U.S. 380, 381 (1993); *see also Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009).

If a court does not find good cause, it still has the discretion to dismiss without prejudice or extend the time period for the plaintiff to effectuate service. *See* Fed. R. Civ. P. 4(m). The Ninth Circuit has declined to provide a specific test that a court must apply in exercising discretion under Rule 4(m) but has established that "under the terms of [Rule 4(m)], the court's discretion is broad." *In re Sheehan*, 253 F.3d at 513.

*B. Motion for partial dismissal under 12(b)(6)*

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief."

James C. Mahan
U.S. District Judge

- 4 -

*Id.* at 679.  When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

**III.   Discussion**

As an initial matter, the court denies FuelZone's motion to stay discovery pending adjudication of its motion to dismiss.  FuelZone's motion to dismiss is adjudicated below, rendering its motion to stay discovery moot.

Further, the court grants the LVMPD defendants' motion to dismiss (ECF No. 7) in part.  Plaintiffs agreed in their response that the following claims can be dismissed (ECF No. 14 at 4):

(1) Plaintiffs' official capacity claim against Officer Nesheiwat;

(2) Plaintiffs' claims against Sheriff Lombardo; and

(3) Plaintiffs' claim against LVMPD for negligent hiring, training, and supervision.

Therefore, the only relevant causes of action left to be adjudicated are FuelZone's motion to dismiss under 12(b)(5) and the LVMPD defendants' 12(b)(6) motion to dismiss as it pertains to plaintiffs' *Monell* claim.

***A.   FuelZone's motion to dismiss for insufficient service of process***

The first issue the court must determine is whether to dismiss the complaint against FuelZone or extend plaintiffs' time to effectuate service.  Specifically, the court must first determine whether the plaintiffs failed to effectuate service of process within the requisite 90 days.  *See* Fed. R. Civ. P. 4(m).  Plaintiffs concede that they failed to effectuate service of process within the requisite 90 days.  (ECF No. 20 at 3).  Thus, the court need decide only

James C. Mahan
U.S. District Judge

- 5 -

whether plaintiffs' reason for failing to meet the deadline constitutes good cause. *See In re Sheehan*, 253 F.3d at 512. Even if the court determines that plaintiffs excuse does not constitute good cause, the court may, by its discretion, extend plaintiffs' time to effectuate service. *See Id.*

Following the Supreme Court's guidance in *Pioneer*, the court considers (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. *See Pioneer*, 507 U.S. at 381. "Exercise of discretion to extend time to complete service is appropriate when, for example, a statute-of-limitations bar would operate to prevent re-filing of the action." *Lemoge*, 587 F.3d at 1198 (citing *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir.2007) and *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 773 (9th Cir. 2004)).

Plaintiffs contend that they failed to timely serve FuelZone due to excusable neglect. (ECF No. 20 at 3). First, plaintiffs argue that FuelZone will not be prejudiced by a thirty-day extension, as "it will not be any more difficult for them to prepare and mount a defense." *Id.* at 4. Further, plaintiffs note that FuelZone "holds a copy of the [c]omplaint" and has been "fully aware of the accident giving rise to [p]laintiffs['] claims since the date of the shooting." *Id.*

Plaintiffs assert that Junes Legal Service, Inc., their third-party legal service, failed to timely serve FuelZone "for some unknown reason."[1] (ECF No. 23 at 3). Although FuelZone points out that "inadvertence of counsel does not constitute 'good cause' for a party's failure to effect timely service of process," (ECF No. 24 at 4 (citing *Wei v. State of Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985))), the Supreme Court has ruled that excusable neglect, where appropriate, can include acceptance of "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer*, 507 U.S. at 389.

---

[1] Plaintiffs initially claimed that the reason for failure to timely serve was due to an error made by a paralegal who mistakenly complied with the Nevada Rules of Civil Procedure applicable to State Court, but not the Federal Rules of Civil Procedure (ECF No. 20 at 3). Plaintiffs submitted a supplement to change this contention, to which FuelZone takes issue with but did not make a motion to strike. (ECF No. 24 at 5).

**James C. Mahan**
**U.S. District Judge**

- 6 -

Moreover, plaintiffs provide evidence that they, in good faith, followed up with Junes Legal Service, Inc., to request a status update on whether FuelZone was served prior to the 90-day deadline. (ECF No. 23 at 3).

The court concludes that plaintiffs' actions were, indeed, negligent. As defendant points out, "[p]laintiffs here selected the process server in question, but the ultimate duty to effect service of process fell on the [p]laintiffs themselves." (ECF No. 24 at 6). Nonetheless, the court concludes that plaintiffs met the minimum threshold needed to establish good cause. The danger of prejudice to the opposing party, the length of the delay, and its potential impact to judicial proceedings are minimal. The reason for plaintiffs' delay was a mere administrative error made in good faith. Additionally, on the face of the present claim, it appears that the statute of limitations has run.[2] (ECF No. 16 at 2). Dismissal would bar plaintiffs from re-filing the claim. *Id.*

Accordingly, the court, in its discretion, extends plaintiffs' service deadline in order to prevent a subsequent time-bar to file this action.

### B.  § 1983 claim

The principal framework governing municipal liability in § 1983 actions against municipalities was established in *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). Under *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom, not upon the mere employment of a constitutional tortfeasor. *Id*. at 691. Therefore, in order for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

---

[2] The Ninth Circuit has made clear that the statute of limitations for §1983 actions is determined by state law. *See Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). Under Nevada law, the statute of limitations period for general torts actions is two years. NRS 11.190(4). The incident occurred on November 11, 2017. Therefore, the statute of limitations ran after November 11, 2019. (ECF No. 16 at 2).

James C. Mahan
U.S. District Judge

- 7 -

"To prevent municipal liability . . . from collapsing into respondeat superior liability," federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees." *Board of Cnty. Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997). Thus, a municipality will only be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ." *Monell*, 463 U.S. at 694. Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

In order to show a policy, the plaintiff must identify "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)) (internal quotation marks omitted). Moreover, the alleged specific municipal policy must be specific in order to sustain plaintiff's § 1983 claim. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[O]bviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm [(unreasonable use of force)] inflicted by a municipal official").

It is well settled in the Ninth Circuit that a plaintiff generally cannot establish a *de facto* policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). "[I]solated or sporadic incidents" are insufficient to enable municipal liability. *Trevino*, 99 F.3d at 918.

Like municipalities, "supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986)). In order to hold supervisors liable

James C. Mahan
U.S. District Judge

- 8 -

under § 1983, there must exist "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 646.

Here, plaintiffs allege that a constitutional right violation occurred when Officer Nesheiwat subjected "Shondell to the unreasonable seizure of her person" and when he "used unreasonable and excessive force when he shot and seriously injured Shondell." (ECF No. 1 at 7).

Further, plaintiffs allege that LVMPD ratified the actions of Officer Nesheiwat because the police fatality public fact-finding review hearing determined that he "complied with policies and procedures during this incident" and "was neither disciplined nor charged with any crime related to his conduct." (ECF No. 1 at 6). Additionally, plaintiffs allege as follows:

> [The LVMPD defendants] knowingly maintain, enforce and apply customs and practices of:
>
> a. Encouraging, accommodating, or ratifying the shooting of Las Vegas citizens; the use of excessive and unreasonable force, including deadly force;
>
> b. Inadequately supervising, training, and disciplining LVMPD police officers, including Defendant Nesheiwat;
>
> c. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers;
>
> d. Ratifying wrongful conduct by police officers and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; and
>
> e. Failing to discipline, investigate and take corrective actions against LVMPD police officers for misconduct, including excessive use of deadly force.

*Id.* at 8.

Plaintiffs' claims are speculative and fail to sufficiently demonstrate that specific LVMPD policies are the "moving force behind the constitutional violation." *Van Ort,* 92 F.3d at 835. Plaintiffs identify only one instance—the present claim—in which alleged ratification of wrongful conduct resulted in a serious injury to a member of the public. Although plaintiffs'

James C. Mahan
U.S. District Judge

- 9 -

1   complaint includes multiple alleged policies, plaintiffs do not demonstrate "sufficient duration,
2   frequency, and consistency" to establish that this claim is a "'permanent and well-settled'
3   practice" rather than an "isolated or sporadic incident." *Monell*, 463 U.S. at 694; *Trevino*, 99
4   F.3d at 918.

5   However, plaintiffs may be able to cure the deficiency in their § 1983 complaint against
6   by amendment. Accordingly, the court dismisses the claim without prejudice. *See AE ex rel*
7   *Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding the district court
8   should give plaintiff leave to allege additional plausible facts supporting a policy or custom).

9   **IV.   Conclusion**

10   Accordingly,

11   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that FuelZone's motion
12   dismiss (ECF No. 16) be, and the same hereby is, DENIED.

13   IT IS FURTHER ORDERED that FuelZone's motion to stay discovery (ECF No. 27) be,
14   and the same hereby is, DENIED as moot.

15   IT IS FURTHER ORDERED that plaintiffs' service deadline be, and the same hereby is,
16   EXTENDED 30 days nunc pro tunc.

17   IT IS FURTHER ORDERED that collectively, the LVMPD defendants' motion to
18   dismiss (ECF No. 7) be, and the same hereby is, GRANTED without prejudice.

19   DATED June 8, 2020.

20   
21   _____
     UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 10 -